[No. B076530. Second Dist., Div. One. June 8, 1994.]

MONTROSE CHEMICAL CORPORATION OF CALIFORNIA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CANADIAN UNIVERSAL INSURANCE COMPANY, INC., et al., Real Parties in Interest.

## COUNSEL

Latham & Watkins, David L. Mulliken, Robert P. Dahlquist, Dorn G. Bishop, Daniel E. Butcher, Kimberly Arouh, Covington & Burling, Marc S. Mayerson, Kirkpatrick & Lockhart, Paul, Hastings, Janofsky & Walker, Munger, Tolles & Olson, and Cary B. Lerman for Petitioners.

No appearance for Respondent.

Coudert Brothers, Douglas L. Hallett, William M. Samoska, R. David Jacobs, Kimberly Straight-Gagnon, Mark Oneal Suttle, Simpson, Thacher & Bartlett, Barry R. Ostrager, O'Melveny & Myers, Ralph W. Dau, Holly E. Kendig, H. Douglas Galt, Buchalter, Nemer, Fields & Younger, Randolph P. Sinnott, Adrienne F. Millican, Richard de Saint Phalle, J. Karren Baker, Gibson, Dunn & Crutcher, Fred F. Gregory, Richard D. Hall, Scott M. Dreyer, Peterson & Ross, Blatt, Hammesfahr & Eaton, Richard L. Blatt, Robert W. Hammesfahr, Bruce M. Engel, Mindlin, Tigerman & Holtzman, Michael Holztman, Hewitt, Kaldor & Prout, Stephen L. Hewitt, Erica S. Arouesty, Drinker, Biddle & Reath, John Chesney, Lawrence A. Nathanson, Paul H. Saint-Antoine, Orrick, Herrington & Sutcliffe, Robert E. Freitas, Jon B. Streeter, Carl W. Chamberlin, William W. Oxley, Thelen, Marrin, Johnson & Bridges, Gary L. Fontana and Christine C. Franklin, for Real Parties in Interest.

## OPINION

**VOGEL (Miriam A.), J.**—This declaratory relief action was filed to determine whether several insurers are obligated to defend and indemnify

their insured in three groups of environmental contamination lawsuits. The issue is whether this action can be set for trial before the third party suits are resolved. Our answer is that, on the record before us, we cannot say one way or the other, and we therefore return the ball to the trial court, with directions to determine the status of the underlying lawsuits and the scope of the carriers' defenses, and then decide whether it is appropriate to set this case for trial.

## BACKGROUND

From 1947 to 1982, Montrose Chemical Corporation of California manufactured DDT. In the early 1980's, Montrose was named as a defendant in several private and governmental environmental contamination actions, some of which are still winding their way through the courts.[1] Since about 1960, Montrose has been covered by comprehensive general liability insurance policies purchased from several insurance companies, all of which provide defense and indemnity coverage for third party claims. When Montrose tendered defense of the contamination actions to its CGL carriers, most of them agreed to defend, all subject to reservations of rights, and an "interim defense agreement" was executed to allocate defense costs among the participating carriers. In 1986, Montrose (concerned about the reservations of rights) sued its carriers for a declaration of its rights to (1) a defense and (2) indemnity in the contamination actions.[2]

In 1989, Admiral Insurance Company moved for summary judgment. The motion was granted but, on Montrose's appeal, we reversed. (*Montrose*

---

[1] The underlying actions are United States, et al. v. Stringfellow, Jr. (Civ. No 83-2501 (HLH) C.D. Cal.), and Newman v. Stringfellow (Super. Ct. Riverside County, No. 165994MF) (the *Stringfellow Cases*); Parr-Richmond Terminal Co. v. Levin Metals Corp. (No. C 85-4776 SC, N.D. Cal.), Levin Metals Corp. v. Parr-Richmond Terminal Co. (Nos. C 84-6273 SC and 84-6324 SC, N.D. Cal.), and Levin Metals Corp. v. Parr-Richmond Terminal Co. (Super. Ct. Contra Costa County, No. 255836) (the *Levin Metals Cases*); United States v. Iron Mountain Mines, Inc. (U.S. Dist. Ct. No. CIV-S-91-768-MLS/JFM), and California v. Iron Mountain Mines, Inc. (U.S. Dist. Ct. No. CIV-S-91-1167-MLS/JFM), State of California v. Iron Mountain Mines, Inc. (Super. Ct. Shasta County, No. 104079), and State of California v. Iron Mountain Mines, Inc. (Mun. Ct. Shasta County, No. 89CV679) and the corresponding Environmental Protection Agency administrative action (the *Iron Mountain Cases*).

[2] The declaratory relief actions have been consolidated and assigned to the same trial judge for all purposes. (Montrose Chemical Corporation of California v. Canadian Universal Insurance Company (Super. Ct. L.A. County No. C594148); Rhone-Poulenc Basic Chemicals Company v. American Motorists Insurance Company, Inc. (Super. Ct. L.A. County No. C597389).) For convenience, our references to Montrose are intended to include Stauffer Chemical Company and Rhone-Poulenc Basic Chemicals Company, which are both named as parties. The defendants in the declaratory relief actions (real parties in interest in this writ proceeding) are Canadian Universal Insurance Company, Inc.; Insurance Company of North America; American Motorists Insurance Company (AMICO); the Travelers Indemnity Company; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; Centaur Insurance Company; Admiral Insurance Company; the Home Insurance Company; Ayliffe and

*Chemical Corp.* v. *Admiral Ins. Co.* (1992) 20 Cal.App.4th 678 [5 Cal.Rptr.2d 358] [*Montrose/Admiral*].) On May 21, 1992, the Supreme Court granted Admiral's petition for review (S026013) and *Montrose/Admiral* (which has yet to be argued) is still pending before the Supreme Court.

In 1990, the United States and the State of California sued Montrose under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA, 42 U.S.C. § 9607 et seq.), alleging that Montrose's operation of its Torrance facility caused environmental contamination. (United States, et al. v. Montrose Chemical Corporation of California, et al. (U.S. Dist. Ct. (C.D.Cal.) 1990, No. CV 90-1322-AAH (JRx).) Montrose's tender of defense was rejected and another declaratory relief action was filed (and assigned to a different trial judge, Hon. John Zebrowski). (Super. Ct. L.A. County, 1990, No. BC005158.) In 1991, Montrose moved for summary adjudication of the insurers' duty to defend. The motion was denied but, on Montrose's petition for a writ of mandate, Division Two of our court directed the trial court to reconsider and grant the motion. The Supreme Court granted review and, ultimately, affirmed the Court of Appeal's order, holding that Montrose had made a prima facie showing of potential liability sufficient to trigger the carriers' duty to defend. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 291, 294 [24 Cal.Rptr.2d 467, 861 P.2d 1153] [*Montrose/CERCLA*].)

Meanwhile, Montrose made similar motions for summary adjudication of the insurers' duty to defend the *Stringfellow*, *Levin Metals* and *Iron Mountain* cases. Those motions were granted and the carriers appealed. We affirmed (*Montrose Chemical Corp.* v. *American Motorists Ins. Co.* [*Montrose/AMICO*]) but, again, the Supreme Court granted review (S031548). After deciding *Montrose/CERCLA*, however, the Supreme Court determined its grant of review in *Montrose/AMICO* was improvident and transferred the matter back to us. With our affirmance of the summary adjudication order in place, on March 24, 1994, we remanded the matter to the trial court.

On June 4, 1993 (while *Montrose/Admiral*, *Montrose/CERCLA* and *Montrose/AMICO* were all pending before the Supreme Court), the trial court set a date (Jan. 10, 1994) for the indemnity trial in the declaratory relief actions and issued a trial preparation schedule. On July 2, Montrose filed a petition for a peremptory writ of mandate, asking us to vacate the trial date and the trial preparation order (1) because the three cases were pending before the

Companies; International Insurance Company; and International Surplus Lines Insurance Company (ISLIC).

Supreme Court and (2) because the contamination actions had not yet been resolved. On August 19, we summarily denied the petition. (*Montrose Chemical Corporation* v. *Superior Court* (Aug. 19, 1993) B076530 [nonpub. opn.] [*Montrose/Canadian*].) On October 14, the Supreme Court granted Montrose's petition for review and stayed further proceedings in the trial court. (No. S034738.)

On February 10, 1994, the Supreme Court transferred *Montrose/Canadian* to us, citing *Montrose/CERCLA* and directing us to vacate our summary denial and issue an alternative writ. We complied.

### DISCUSSION

 Montrose contends trial of the declaratory relief actions' indemnity issues must await (1) the Supreme Court's resolution of *Montrose/Admiral* and (2) resolution of all of the underlying contamination actions. We address the second point first which, as will appear, makes the first point essentially moot.[3]

### A.

In *Montrose/CERCLA*, the Supreme Court held that Montrose had made a prima facie showing that the complaint in the underlying action fell within the coverage of the various policies and thus affirmed the Court of Appeal's judgment directing entry of an order summarily adjudicating the carriers' duty to defend. (*Montrose/CERLCA*, *supra*, 6 Cal.4th at pp. 304-305.) Anticipating the next issue (which was then before the Supreme Court in this case), the court articulated the test for determining the time at which the remaining indemnity issues may be litigated in the declaratory relief action:

"To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action. [Citations.] For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious. This is the classic situation in which the declaratory relief action should be stayed.

---

[3]Obviously, the January 1994 trial date has come and gone. In addition, so has the trial judge (Hon. G. Keith Wisot), who recently retired. At argument, we were advised that the cases have been reassigned to another judge (Hon. Valerie Baker) but that (by reason of the Supreme Court's earlier stay order) a new trial date has not been set.

By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment." (*Montrose/CERCLA, supra,* 6 Cal.4th at pp. 301-302.)[4]

## B.

 Accordingly, the question before us is whether the coverage questions are logically unrelated (that is, irrelevant) to the issues of consequence in the contamination cases so that they could be determined in the declaratory relief action without prejudice to Montrose in the underlying actions. On the record before us, it is impossible to answer this question.

The trial date was set over a year ago. At that time, the trial court did not have the benefit of the Supreme Court's holding in *Montrose/CERCLA* and it therefore did not make the findings which, in our view, are now required to permit meaningful review of a trial court's decision to proceed with trial of the indemnity issues while the underlying actions are still pending. In addition, the underlying lawsuits have advanced during the last year, which means that even if the trial court's order was premature when made, it may not be so now. To decide whether it is now appropriate to set the indemnity issues for trial, the trial court must determine:

—(1) Which of the underlying contamination actions are still pending?

—(2) Of those that are still pending, what issues remain to be decided and when will that happen?

—(3) Which defenses to coverage (whether pleaded as affirmative defenses or raised by general denials) do each of the carriers intend to pursue as to each of the underlying actions?

—(4) What facts have to be determined to reach the merits of the carriers' defenses?

---

[4]Justice Kennard, separately concurring, restated the rule this way: "There are at least two exceptions to the general rule barring declaratory relief on the insurer's duty to defend. First, declaratory relief is available if the insurer can establish lack of coverage by means of facts that the insured does not dispute. Second, declaratory relief is available if the insurer's defense to coverage hinges on factual issues that are unrelated to the issues in the third party liability action. [Citation.] In each of these situations, the duty to defend can be determined without forcing the insured to litigate issues that may arise in the third party action. . . . [¶] Of course, the insurer may have more than one defense to coverage. In that event, the trial court will need to consider each defense separately to decide whether it can be determined without prejudice to the insured. . . ." (*Montrose/CERCLA, supra,* 6 Cal.4th at pp. 305-306 (conc. opn. of Kennard, J.).)

—(5) What other facts, if any, are relevant to the determination of prejudice?

—(6) Who has the burden of proof? Since the carriers are pushing for a prompt trial date, is it their burden to prove that Montrose will not be prejudiced? Or does Montrose's request for an indefinite stay impose upon it the burden of proving prejudice?[5]

Although Montrose on the one hand, and the carriers on the other, have filed supplemental briefs and declarations describing recent events in most of the contamination actions, the information is too scanty to permit meaningful evaluation at this point. Moreover, whatever one says, the other disputes. In our view, the trial court needs declarations from the attorneys representing Montrose in the contamination cases, copies of dispositive orders, judgments and trial schedules, and a statement from each of the carriers listing the defenses to be pursued and the issues to be litigated as part of those defenses. Then and only then can the court determine whether the issues overlap and make the type of detailed findings needed for meaningful appellate review.

## C.

There are no easy answers in a case such as this. Although a further delay necessarily imposes a burden on any carrier which ultimately prevails on the indemnity issues, that is not a sufficient reason to try the indemnity issues before the third party claims are resolved. ▮ As the Supreme Court has explained, (1) since the duty to defend is broader than the duty to indemnify and (2) since an insurer may owe a duty to defend in an action in which coverage is in doubt and ultimately does not develop, it follows that (3) the duty to defend is a continuing one which arises on the tender of defense and (4) lasts until (a) the underlying lawsuit is resolved or (b) the coverage issue can be determined without prejudice to the insured. (*Montrose/CERCLA, supra*, 6 Cal.4th at p. 295.) This rule is not unique to California.[6]

When the courts talk about prejudice to the insured from concurrent litigation of the declaratory relief and third party actions, they are saying, in

---

[5]This issue was not addressed in *Montrose/CERCLA* and it has not been briefed in these proceedings.

[6]See, e.g., *Morris v. Farmers Ins. Exchange* (Wyo. 1989) 771 P.2d 1206, 1211-1212; *State Farm Fire & Cas. Co. v. Finney* (1989) 244 Kan. 545 [770 P.2d 460, 466]; *Hartford Ins. Group v. District Court* (Colo. 1981) 625 P.2d 1013, 1016-1018; *Zurich Ins. v. Northbrook Excess & Surplus* (1986) 145 Ill.App.3d 175 [98 Ill.Dec. 512, 494 N.E.2d 634]; *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.* (3d Cir. 1989) 887 F.2d 1213; *Aetna Cas. & Sur. Co. v. PPG Industries, Inc.* (D.Ariz. 1983) 554 F.Supp. 290, 296; *Nat. Union Fire Ins. v. Continental Ill. Corp.* (N.D.Ill. 1987) 666 F.Supp. 1180, 1189, fn. 20.)

effect, that the insurer must not be permitted to join forces with the plaintiffs in the underlying actions as a means to defeat coverage.[7] Another sort of prejudice occurs when the insured is compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers. And, of course, there is the collateral estoppel issue. If the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage. (See *Allstate Ins. Co.* v. *Harris* (N.D.Cal. 1978) 445 F.Supp. 847, 851; *Village Management, Inc.* v. *Hartford Acc. & Indem.* (N.D.Ill. 1987) 662 F.Supp. 1366, 1373; *R.E. Spriggs Co.* v. *Adolph Coors Co.* (1979) 94 Cal.App.3d 419, 429-431 [156 Cal.Rptr. 419]; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 873-874 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Hartford Ins. Group* v. *District Court, supra,* 625 P.2d at pp. 1016-1018.)

 Notwithstanding this emphasis on the potential prejudice to Montrose, the trial court must consider the burden on the carriers. They have paid millions of dollars for defense costs and they must continue to pay until the underlying actions are resolved unless, of course, they are allowed to litigate the indemnity issues. In a case where there is no potential conflict between the coverage issues and the issues in the third party action, the carrier may obtain an early trial date in the coverage action and, if it wins, that is the end of its duty to defend. (*General Ins. Co. of America* v. *Whitmore* (1965) 235 Cal.App.2d 670, 677 [45 Cal.Rptr. 556].) Where that cannot be done, however, the carrier gets to keep paying and paying and paying.

For this reason, the trial court should not hesitate to fashion orders which attempt to balance these conflicting concerns. For example, the possibility of

---

[7]The venom with which the carriers attack their insured in these proceedings explains why the courts are concerned. National Union, for example, describes Montrose as the manufacturer from hell, blaming it for "the near extinction of the California brown pelican and the death of untold millions of birds and fish," and explaining that, "[a]s a result of Montrose Chemical's discharges, there lies at the bottom of Los Angeles Harbor what has been described as a giant 'ball' of DDT that has imperilled all aquatic life in the harbor." At the Parr-Richmond site (according to National Union), Montrose was responsible for "a fish-kill of 48 striped bass . . . ." At the Iron Mountain site, Montrose is responsible for "numerous large fish kills in the Sacramento River, affecting in particular the winter-run Chinook salmon, listed as a threatened species . . . ." That the plaintiffs in the third party actions would thus describe a defendant is to be expected. That an insurer should jump on the bandwagon while the third party actions are still pending is not. We suspect Judge Cardozo would turn over in his grave at the thought of a fiduciary thus describing its insured. (*Meinhard* v. *Salmon* (1928) 249 N.Y. 458 [164 N.E. 545, 546, 62 A.L.R. 1]; *Frommoethelydo* v. *Fire Ins. Exchange* (1986) 42 Cal.3d 208, 215 [228 Cal.Rptr. 160, 721 P.2d 41].)

severance should be explored in this case. Unlike *Montrose/CERCLA*, where there was only one third party claim, this case involves three groups of lawsuits, the *Stringfellow*, *Levin Metals* and *Iron Mountain* actions and, within each group, two or three or more separate cases. In the abstract, we see no reason why the carriers have to wait until the last of the underlying actions is resolved before any of the indemnity issues are tried.

For example, one of the two *Stringfellow Cases* (the Newman action) has been settled. In the other action, the parties are awaiting the District Court's ruling on a Special Master's report. If the carriers are able to persuade the trial court that the issues as yet undecided in the one remaining *Stringfellow* case would be unaffected by trial of the indemnity issues dispositive of those claims, it would then be up to Montrose to explain how it could possibly be prejudiced by severing the *Stringfellow Cases* and proceeding to try those indemnity issues at the trial court's earliest convenience.[8] With that information in hand, the trial court can meaningfully exercise its discretion. And even if all parts of the trial must be postponed, the trial court may consider whether and to what extent discovery may proceed.

### D.

As noted at the outset, Montrose contends the Supreme Court's decision in *Montrose/Admiral* must precede trial of the indemnity issues because *Montrose/Admiral*, whatever its holding, will affect the carriers' defenses to Montrose's indemnity claims.[9] This problem is more imagined than real. Two years have passed since the Supreme Court granted review in *Montrose/Admiral*, which suggests that a decision will be forthcoming within a year. As a practical matter, it will take months, not weeks, for the trial court to get the information it needs and to decide whether to set all or some part of this action for trial. If the court decides to set a trial date, it will also have to fashion a trial preparation order so that discovery can be concluded, motions can be heard, and all the other matters presently stayed can be completed. And, of course, the trial court presumably has other cases set for trial and would not in any event be in a position to set an immediate trial date. There

---

[8]By framing our example in this fashion, we do not mean to suggest the burden of proof is on Montrose. As noted above, that issue remains open.

[9]In *Montrose/Admiral*, the trial court held that Admiral had no duty to defend or indemnify Montrose in the *Levin Metals Cases* because the alleged injuries did not "occur" during Admiral's policy periods, and that Admiral had no duty to defend or indemnify Montrose in the *Stringfellow Cases* because the contamination alleged in those actions was an uninsurable "known loss." We disagreed, and the Supreme Court will ultimately determine (1) which trigger determines the dates of coverage ("manifestation of loss," "continuous injury" or some other variation) and (2) whether the "known loss rule" defeats Montrose's claim of coverage for the *Stringfellow Cases*.

simply is no way that any part of this case could get to trial before mid-1995. If *Montrose/Admiral* is then still undecided, the trial court will be able to make an intelligent decision about its relevance to the issues to be decided in the indemnity litigation, something that is virtually impossible for us to do on the record before us.

## DISPOSITION

Let a peremptory writ of mandate issue, directing the trial court (1) to set aside its order of June 4, 1993, setting the indemnity issues for trial; (2) to set a schedule for the presentation of evidence and briefing to bring before the trial court the information it needs to make its determination whether to set all or part of the indemnity issues for trial; and (3) to thereafter make such orders as the trial court, in the sound exercise of its discretion, determines are appropriate.

Ortega, Acting P. J., and Masterson, J., concurred.