[No. S123766. July 25, 2005.]

SCOTTSDALE INSURANCE COMPANY, Plaintiff and Appellant, v. MV TRANSPORTATION et al., Defendants and Respondents.

## Counsel

Selman Breitman, Neil Selman, Jan L. Pocaterra, Lynette Klawon, Alan B. Yuter and Rachel E. Hobbs for Plaintiff and Appellant.

Wiley Rein & Fielding, Laura A. Fogan, Alicia C. Ritter; Sinnott, Dito, Moura & Puebla, Randolph P. Sinnott and John J. Moura for Complex Insurance Claims Litigation Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Greines, Martin, Stein & Richland, Irving H. Greines, Feris M. Greenberger and Robert A. Olson for Truck Insurance Exchange, Farmers Insurance Exchange and Fire Insurance Exchange as Amici Curiae on behalf of Plaintiff and Appellant.

Hancock Rothert & Bunshoft, W. Andrew Miller, William J. Baron, Kathryn C. Ashton and Molly K. Kane for Great American Insurance Company and London Market Insurers as Amici Curiae on behalf of Plaintiff and Appellant.

Heller Ehrman White & McAuliffe, Richard DeNatale, Peter F. McAweeney, David B. Goodwin, Deanna M. Wilcox; and John Andrew Baird for Defendants and Respondents.

Latham & Watkins, David L. Milliken, Marc D. Halpern and Edward J. Balsamo for Montrose Chemical Corporation of California as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**BAXTER, J.**—May a commercial general liability (CGL) insurer obtain reimbursement of its expenses of defending its insured against a third party lawsuit, when it is ultimately determined, as a matter of law, that the policy never afforded any potential for coverage, and that a duty to defend thus never arose? Where, as here, the insurer properly reserved its right to such reimbursement, we conclude that the answer is "yes."

Defendant MV Transportation (MV) was sued by a third party (third party action). Plaintiff Scottsdale Insurance Company (Scottsdale) advanced the costs of defending MV, its insured, in the third party action, but did so under a reservation of its right, if any, to recoup such costs. While the third party action was pending, Scottsdale sued MV (the insurance action), seeking a declaration, inter alia, that because its policies afforded no potential coverage of the third party action, it owed no defense, and was therefore entitled to reimbursement of its defense costs.

The third party action ended in settlement. Thereafter, in the insurance action, the superior court found a potential for coverage, but the Court of Appeal ultimately disagreed. For reasons of law, the Court of Appeal held that the allegations in the third party's complaint never triggered any possibility of coverage under Scottsdale's policies. Nonetheless, the Court of Appeal concluded that Scottsdale was not entitled to reimbursement. The Court of Appeal reasoned, in essence, that its no-potential-coverage determination "extinguished" Scottsdale's defense duty *only from that time forward*. Hence, the Court of Appeal determined, Scottsdale could not "retroactively" recover defense costs expended before its duty was "extinguished."

We disagree. By ruling, as a matter of law, that the third party action never presented any possibility of coverage by Scottsdale's policies, the Court of Appeal established not that the duty to defend was thereupon prospectively "extinguished," but *that it never arose*. Therefore, Scottsdale may recover amounts it expended in defending the insured under its reservation of rights. To the extent the Court of Appeal held otherwise, its judgment must be reversed.

### FACTS

Defendants in this action by Scottsdale are Scottsdale's insured, MV, and several of MV's employees. The underlying lawsuit, for which Scottsdale seeks reimbursement of defense costs, was filed by MV's competitor in the

transportation industry, Laidlaw Transit Services, Inc. (Laidlaw). The parties do not dispute the pertinent facts as stated by the Court of Appeal. We therefore adopt the Court of Appeal's statement, as follows (with bracketed insertions by this court and deletions indicated by ellipses):

*The underlying lawsuit by Laidlaw*

In January of 2000, Laidlaw filed an action against MV and several of MV's employees who had previously worked for Laidlaw, including MV's new president and chief operating officer (Jon Monson). Laidlaw's complaint . . . alleged causes of action for breach of fiduciary duty, tortious inducement to breach the duty of loyalty and fiduciary duty, intentional interference with contractual relations and with prospective business advantage, misappropriation of trade secrets, and unlawful, unfair, and fraudulent business practices.

In essence, Laidlaw's suit alleged certain contractual breaches, unlawful business practices, and misappropriation of trade secrets by using [Laidlaw's] confidential, proprietary information to compete unfairly in bidding for and obtaining new busing contracts in urban public transportation services markets. The complaint specified two markets in particular, Lawrence, Kansas, and Indianapolis, Indiana, and noted other unspecified cities as well. The confidential, proprietary information included bidding models, bidding formulas, and other nonpublic information used in developing Laidlaw's bids, such as Laidlaw's overhead costs and financial objectives allocated to each project. As alleged in the complaint, MV used such information, as well as Laidlaw's customer list and other trade secrets, to "significantly impede Laidlaw's ability to market itself as a unique provider" of its services.

Soon after Laidlaw filed its complaint, MV's legal counsel tendered the defense to its insurer, Scottsdale. Scottsdale asserted that although one Ninth Circuit case had "concluded that certain trade secret misappropriation claims fall within the scope of the advertising injury liability coverage of a general liability policy," the underlying facts in that case . . . [were] distinguishable, and Scottsdale's defense obligations were not triggered by the Laidlaw suit. Nonetheless, Scottsdale agreed to provide a defense . . . to MV and the individuals named in the Laidlaw suit under a reservation of certain rights, including the right to seek a declaration of its rights and duties under the policy and "[t]he right to seek reimbursement of defense fees paid toward

defending causes of action which raise no potential for coverage, as authorized by the California Supreme Court in *Buss v. Superior Court (Transamerica Ins. Co.)* (1997) 16 Cal.4th 35 [65 Cal.Rptr.2d 366, 939 P.2d 766]."

In December of 2000, Laidlaw and MV agreed to settle the suit by Laidlaw. Pursuant to the settlement agreement, MV and the individual defendants agreed to return to Laidlaw documents containing allegedly misappropriated bid models, bid formulas and other trade secrets, and to refrain from using such material in developing MV's bids or proposals to customers in the public transportation market. However, the settlement agreement did not require that MV pay any money to Laidlaw. Attorney fees and costs incurred [by Scottsdale] in defending the Laidlaw suit were approximately $340,000.

*The coverage dispute between Scottsdale and MV*

Scottsdale issued two CGL policies to MV, one effective from December 1, 1998, to December 1, 1999 (hereinafter, the first CGL policy), and the other from December 1, 1999, to December 1, 2000 (hereinafter, the second CGL policy). The first CGL policy [included Scottsdale's agreement] to defend MV against any suit and to pay any damages due to " 'advertising injury' caused by an offense committed in the course of advertising [MV's] goods, products or services." The policy defined the term "advertising injury" as including the "[m]isappropriation of advertising ideas or style of doing business."

The second CGL policy also obligated Scottsdale to pay MV's damages and costs of suit for any advertising injury. The policy language, however, was somewhat different from that in the first CGL policy. Specifically, the second CGL policy defined advertising injury as, in pertinent part, "[t]he use of another's advertising idea in [the insured's] 'advertisement.' " And the policy defined "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about [the insured's] goods, products or services for the purpose of attracting customers or supporters."

During the course of the underlying Laidlaw litigation, in June of 2000, Scottsdale filed the present declaratory relief action against MV and other defendants named in the Laidlaw action. After settlement of the underlying action, Scottsdale moved for summary judgment seeking a determination that it owed no legal defense obligations, and seeking reimbursement of the full

amount paid for defense costs and fees and a declaration that it owed no further costs and fees. The trial court denied Scottsdale's motion for summary judgment and ruled that it had a duty to defend. The court observed that Laidlaw "alleged a broader audience than simply" the two cities noted in the complaint where MV sought business (i.e., Lawrence, Kansas, and Indianapolis, Indiana), and concluded that "[b]roadly construed, the . . . [c]omplaint alleged misappropriation of Laidlaw's 'advertising ideas,' for which there is at the very least the potential of coverage, and therefore Scottsdale's duty to defend is established as a matter of law."[1]

Recognizing that the trial court's ruling on the motion for summary judgment disposed of the entire case, the parties stipulated to a final judgment against Scottsdale. In April 2001, the superior court entered a stipulated judgment.

Scottsdale appealed, urging that "advertising," as used in standard CGL policies covering advertising injury, was limited to "widespread promotional activities directed to the public at large." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1276, fn. 9 [10 Cal.Rptr.2d 538, 833 P.2d 545] (*Bank of the West*).) Hence, Scottsdale argued, "advertising" did not include one-on-one solicitation of individual customers through a competitive bidding process for tailor-made services. In a 2002 opinion, the Court of Appeal disagreed. It concluded that advertising could include MV's "one-on-one business solicitations that used a common style and promotional information disseminated to more than one customer." The Court of Appeal thus found a potential for coverage giving rise to Scottsdale's duty to defend. It affirmed the judgment against Scottsdale.

We granted Scottsdale's petition for review and held the case for *Hameid v. National Fire Ins. of Hartford* (2003) 31 Cal.4th 16 [1 Cal.Rptr.3d 401, 71 P.3d 761] (*Hameid*), then pending. In *Hameid* we adopted the language of *Bank of the West, supra,* 2 Cal.4th at page 1276, footnote 9, quoted, *ante,* and interpreted "advertising," as used in a standard CGL policy covering liability for "advertising injury," to mean "widespread promotional activities usually directed to the public at large." (*Hameid, supra,* 31 Cal.4th at p. 24.) We held that use of a competing hair salon's customer list to identify the competitor's clients, and to solicit them through mailers and telephone calls, did not constitute "advertising" under such a policy. Accordingly, we concluded that the insurer had no duty under its "advertising injury" clause to defend the competitor's suit seeking damages for harm caused by such activities. We

---

[1] Here ends our quotation from the Court of Appeal opinion.

noted we had no "occasion to decide whether *widespread promotional activities* directed at *specific market segments* constitute advertising under the [standard] CGL policy." (*Id.*, at p. 24, fn. 3, italics added.)

We transferred this case to the Court of Appeal for reconsideration in light of *Hameid*. Upon reconsideration, the Court of Appeal concluded, contrary to its prior determination, that neither CGL policy issued by Scottsdale to MV afforded potential "advertising injury" coverage for MV's improper use of Laidlaw's trade secrets to prepare tailored competitive bids for specific urban transportation contracts, as alleged in the Laidlaw complaint.

As to the first CGL policy, which used "advertising injury" language substantially identical to that construed in *Hameid, supra*, 31 Cal.4th 16, the Court of Appeal directly applied *Hameid* to conclude that the policy did not cover solicitations of individual customers. As to the second CGL policy, which defined "advertising" as "a notice . . . broadcast or published to the general public *or specific market segments* about [the insured's] goods, products or services for the purpose of attracting customers or supporters" (italics added), the Court of Appeal reasoned that the Laidlaw complaint did not allege information was "broadcast or published" as the policy required.

Though it concluded that neither Scottsdale policy ever afforded potential coverage of the Laidlaw suit, and that "MV *should not have tendered* to Scottsdale its defense in the [Laidlaw] action" (italics added), the Court of Appeal nonetheless ruled that Scottsdale could not recover fees and costs previously advanced toward MV's defense. The Court of Appeal reasoned that Scottsdale's defense duty arose and continued until "extinguished" by a judicial determination that no potential for coverage existed. In the Court of Appeal's view, Scottsdale's reimbursement claim was an unavailing attempt to terminate its defense duty "retroactively."

To limit its defense obligation, the Court of Appeal asserted, Scottsdale could have (1) denied MV a defense, thus risking a bad faith suit by MV, or (2) obtained a prompt declaration of its rights and duties while the Laidlaw action was still pending. Having failed to do either, the Court of Appeal held, Scottsdale could not recover defense costs already advanced.

We granted Scottsdale's petition for review. We now agree with Scottsdale that the Court of Appeal erred in its analysis of the reimbursement issue. The Court of Appeal ruled, as a matter of law, that Scottsdale never had a duty to defend MV in the Laidlaw action. Accordingly, Scottsdale is entitled to reimbursement of the costs and expenses it advanced, under a reservation of

rights, toward the defense of that action on behalf of MV. To the extent the Court of Appeal denied such reimbursement, we will therefore reverse its judgment.[2]

## DISCUSSION

### 1. *General principles.*

■ We summarize familiar principles pertaining to an insurer's duty of defense. An insurer must defend its insured against claims that create a *potential* for indemnity under the policy. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose*); *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*).) The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].)

■ Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. (*Montrose, supra,* 6 Cal.4th 287, 295.) But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. (*Ibid.*) Moreover, that the precise causes of action pled by the third party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability. (*Gray, supra,* 65 Cal.2d 263, 275–276; *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 610–611 [222 Cal.Rptr. 276].)

---

[2] In its answer brief on the merits, MV has argued at length that, contrary to the Court of Appeal's conclusion, the allegations of the Laidlaw complaint suggested a potential for coverage and Scottsdale thus did have a duty to defend. We find, however, that MV has failed to preserve this issue for our consideration. Only Scottsdale sought review in this court. MV neither filed a petition for review nor asserted in its answer to Scottsdale's petition that, if we granted review on the reimbursement issue raised by Scottsdale, we should also address the duty-to-defend issue. (See Cal. Rules of Court, rule 28.1(c).) MV's answer did briefly argue that the issue of potential coverage was not purely one of law, but did so only to demonstrate that the Court of Appeal's unpublished decision had properly found no right of reimbursement *and thus did not warrant review.* Under these circumstances, we conclude that such issues were not "raised or fairly included in the petition or answer" (*id.,* rule 29(b)(1)) and were not properly raised in MV's brief on the merits (*id.,* rule 29.1(b)(3)). We therefore decline to address them. For purposes of this opinion, we accept the Court of Appeal's determination that, as a matter of law, the policies issued by Scottsdale to MV never afforded potential coverage of the Laidlaw action.

■ The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. (*Montrose, supra,* 6 Cal.4th 287, 295.) When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, "it is extinguished only prospectively and not retroactively." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 46 [65 Cal.Rptr.2d 366, 939 P.2d 766] (*Buss*); see also *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 58 [70 Cal.Rptr.2d 118, 948 P.2d 909] (*Aerojet-General*).)

On the other hand, "in an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence, the insurer does not have a duty to defend. [Citation.] 'This freedom is implied in the policy's language. It rests on the fact that the insurer has not been paid premiums by the insured for [such] a defense. . . . [T]he duty to defend is contractual. "The insurer has not contracted to pay defense costs" for claims that are not even potentially covered.' [Citation.]" (*Aerojet-General, supra,* 17 Cal.4th 38, 59, quoting *Buss, supra,* 16 Cal.4th 35, 47.)

■ From these premises, the following may be stated: If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.

### 2. *Scottsdale's right to reimbursement.*

Scottsdale advanced fees and costs to defend MV against the Laidlaw suit, but did so under a reservation of rights. By a letter dated March 15, 2000, counsel for Scottsdale informed MV's general counsel that, although Scottsdale did not believe Laidlaw's claims fell within the scope of its policies' "advertising injury" provisions, Scottsdale would provide a defense subject to various reservations of rights. These included "[t]he right to seek a declaration of [Scottsdale's] rights and duties under its [p]olicies regarding its defense and/or indemnity obligations," and "[t]he right to seek reimbursement of defense fees paid toward defending causes of action which raise no potential for coverage, as authorized . . . in *Buss*[, *supra*,] 16 Cal.4th 35, 65 . . . ." Scottsdale thus served notice that it might seek to recover defense

fees and costs *already* expended if it were *later* determined that Scottsdale had owed MV no defense.

█ As we explained in *Buss, supra,* 16 Cal.4th 35, the insurer may unilaterally condition its proffer of a defense upon its reservation of a right later to seek reimbursement of costs advanced to defend claims that are not, and never were, potentially covered by the relevant policy. Such an announcement by the insurer permits the insured to decide whether to accept the insurer's terms for providing a defense, or instead to assume and control its own defense. (*Id.,* at p. 61, fn. 27.)[3]

Despite its conclusion that the Scottsdale policies never afforded any potential coverage of the Laidlaw claims, and despite Scottsdale's explicit reservation of its reimbursement rights, the Court of Appeal held that Scottsdale may not recover the costs it advanced to defend MV in the Laidlaw action. The Court of Appeal based this ruling on the premise that a judicial "no duty" determination "extinguishes" the duty to defend "only prospectively and not retroactively." (*Buss, supra,* 16 Cal.4th 35, 46; see *Aerojet-General, supra,* 17 Cal.4th 38, 58.) Thus, the Court of Appeal reasoned, if the insurer wishes to limit its liability for defense costs, it either must adopt the "risky strategy" of refusing a defense outright, thus exposing itself to a bad faith suit by the insured, or must seek, during the pendency of the third party action, to terminate its defense duty *from that time forward* by proving no potential for coverage.

MV and its amicus curiae advance the same premise here.[4] They urge as follows: In a CGL policy, the insured purchases a guarantee that the insurer will absorb all costs of defending the insured against a third party action that includes one or more potentially covered claims, and that it will continue to do so until the third party action is concluded or the insurer can establish that no claim is even potentially covered. Under this bargain, the insurer bears the entire risk of its incorrect decision to provide or withhold a defense. Thus, if

---

[3] Of course, as MV's amicus curiae, Montrose Chemical Corporation of California, points out, an insurer cannot unilaterally "reserve" "rights" it never had under the relevant insurance policy. (*Buss, supra,* 16 Cal.4th 35, 50, & fn. 12.) Thus, the insurer cannot use a unilateral reservation of rights to *create* a "right" of reimbursement of costs extended to defend claims that were potentially covered by the policy.

[4] As noted, *ante,* Montrose Chemical Corporation of California has filed an amicus curiae brief in support of MV. Amicus curiae briefs in support of Scottsdale have been filed by (1) the Complex Insurance Claims Litigation Association, (2) Truck Insurance Exchange, Farmers Insurance Exchange, and Fire Insurance Exchange, and (3) Great American Insurance Company and London Market Insurers.

the insurer wrongly concludes that no duty to defend has arisen, and therefore declines the insured's tender of defense, the insured may recover its damages in contract and tort. On the other hand, if the insurer seeks to avoid that pitfall by assuming the costs of the insured's defense, those costs cannot be shifted back to the insured, even if the insurer reserved its rights and a court later determines, as a matter of law, that there was never any potential coverage.

We disagree with this analysis. We are persuaded that an insurer, having reserved its right to do so, may obtain reimbursement of defense costs which, in hindsight, it never owed.

*Buss, supra,* 16 Cal.4th 35, succinctly explained the scope of the contractual right to a defense that the insured purchases with its premiums. "[T]he insurer's duty to defend runs to claims that *are . . . potentially covered,* in light of facts alleged or otherwise disclosed. [Citations.]" (*Id.,* at p. 46, italics added.) This duty, *having arisen,* "is discharged when the action is concluded. [Citation.] It may be extinguished earlier, if it is shown that no claim can *in fact* be covered. [Citation.] If it is so extinguished, however, it is extinguished only prospectively and not retroactively: before, the insurer *had a duty to defend;* after, it does not have a duty to defend *further.* [Citations.]" (*Ibid.,* italics added.)

Thus, the insurer's duty to defend *arises* whenever the third party complaint and/or the available extrinsic facts suggest, under applicable law, the possibility of covered claims. In such circumstances, if the insured tenders defense of the third party action, the insurer must assume it. The duty to defend then continues until the third party litigation ends, unless the insurer sooner proves, by facts subsequently developed, that the potential for coverage which previously appeared cannot possibly materialize, or no longer exists. The insurer must absorb all costs it expended on behalf of its insured while the duty to defend was in effect—i.e., before the insurer established that the duty had *ended.* (*Montrose, supra,* 6 Cal.4th 287, 295–304; see also, e.g., *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 977 [39 Cal.Rptr.2d 520] (*Haskel*); *Hartford Accident & Indemnity Co. v. Superior Court* (1994) 23 Cal.App.4th 1774, 1780–1781 [29 Cal.Rptr.2d 32].)

However, we have made clear that where the third party suit never presented any potential for policy coverage, the duty to defend does not arise in the first instance, and the insurer may properly deny a defense. Moreover, the law governing the insurer's duty to defend need not be settled at the time the insurer makes its decision. As several courts have explained, *subsequent*

case law can establish, in hindsight, that no duty to defend ever existed. "If the terms of the policy provide no potential for coverage, . . . the insurer acts properly in denying a defense *even if that duty is later evaluated under case law that did not exist at the time of the defense tender.* [Citations.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 26 [44 Cal.Rptr.2d 370, 900 P.2d 619], italics added; see also *Hameid, supra,* 31 Cal.4th 16, 20–21, 30; *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1151 [29 Cal.Rptr.2d 559] [duty to defend did not arise in first instance where only potential for liability turned on legal question later resolved in insured's favor]; *State Farm Mut. Auto. Ins. Co. v. Longden* (1987) 197 Cal.App.3d 226, 233 [242 Cal.Rptr. 726] [same].)

These principles are equally true where, as here, the insurer does not deny a defense at the outset, but instead elects to provide one under a reservation of its right to reimbursement. By law applied in hindsight, courts can determine that no potential for coverage, and thus no duty to defend, ever existed. If that conclusion is reached, the insurer, having reserved its right, may recover from its insured the costs it expended to provide a defense which, under its contract of insurance, it was never obliged to furnish.

■ In *Buss, supra,* 16 Cal.4th 35, we confirmed an insurer's entitlement, under a reservation of rights, to recoup its costs of defending against third party claims that are not potentially covered. *Buss* addressed an insurer's rights and obligations with respect to a "mixed" third party action, in which potential coverage appears as to some claims, but not as to others. In such circumstances, *Buss* noted, the insurer must defend the entire "mixed" action. (*Id.,* at pp. 48–49.) This is so, *Buss* explained, because the contractual duty to defend the potentially covered claims immediately and meaningfully implies the prophylactic duty to defend "entirely," without pausing to parse among potentially covered and clearly uncovered claims. (*Id.,* at p. 49.) Nonetheless, we held that the insurer, having reserved its rights, may recover its costs of defense attributable to the claims for which there was no potential coverage. (*Id.,* at pp. 50–53.)

The Court of Appeal, echoed here by MV and its amicus curiae, reasoned that *Buss*'s reimbursement analysis applies only to "mixed" actions, where the insurer must defend even clearly uncovered claims and has no option to deny a defense at the outset, or to minimize its liability by seeking a prompt judicial declaration that it has no duty to defend. We are not persuaded. Though *Buss* itself involved a "mixed" action, *Buss*'s analysis of the reim-

bursement issue applies equally where the insurer, acting under a reservation of rights, defended an action in which, as it turns out, no claim was ever potentially covered.

As *Buss* explained, the duty to defend, and the extent of that duty, are rooted in basic contract principles. The insured pays for, and can reasonably expect, a defense against third party claims that are potentially covered by its policy, but no more. Conversely, the insurer does not bargain to assume the cost of defense of claims that are not even potentially covered. To shift these costs to the insured does not upset the contractual arrangement between the parties. Thus, where the insurer, acting under a reservation of rights, has prophylactically financed the defense of claims as to which it owed no duty of defense, it is entitled to restitution. Otherwise, the insured, who did not bargain for a defense of noncovered claims, would receive a windfall and would be unjustly enriched. (*Buss, supra*, 16 Cal.4th 35, 47–52.)

*Buss* itself made clear that this analysis does not apply only when the insurer was forced, in a "mixed" action, to defend noncovered claims along with those that were potentially covered. On the contrary, *Buss* indicated it was simply *extending* well-settled law to "mixed" actions.

Thus, *Buss* declared: "As to . . . claims that are not even potentially covered, . . . the insurer may . . . seek reimbursement for defense costs. Apparently, all the decisional law considering such claims *in and of themselves* so assumes. (See, e.g., *Hogan v. Midland National Ins. Co.* [(1970)] 3 Cal.3d [553,] 563–564 [91 Cal.Rptr. 153, 476 P.2d 825]; *American Motorists Ins. Co. v. Allied-Sysco Food Services, Inc.* [(1993)] 19 Cal.App.4th [1342,] 1355–1356 [24 Cal.Rptr.2d 106]; *Reliance Ins. Co. v. Alan* [(1990)] 222 Cal.App.3d [702,] 708–710 [272 Cal.Rptr. 65]; *Insurance Co. of the West v. Haralambos Beverage Co.* [(1987)] 195 Cal.App.3d [1308,] 1322–1323 [241 Cal.Rptr. 427]; *Travelers Ins. Co. v. Lesher* [(1986)] 187 Cal.App.3d [169,] 203 [231 Cal.Rptr. 791]; *Western Employers Ins. Co. v. Arciero & Sons, Inc.* (1983) 146 Cal.App.3d 1027, 1028–1029, 1032 [194 Cal.Rptr. 688]; *Walbrook Ins. Co. Ltd. v. Goshgarian & Goshgarian* (C.D.Cal. 1989) 726 F.Supp. 777, 781–784 [applying California law]; *Omaha Indem. Ins. Co. v. Cardon Oil Co.* (N.D.Cal. 1988) 687 F.Supp. 502, 504–505; affd. (9th Cir. 1990) 902 F.2d 40 [same]; accord, *Ins. Co. North America v. Forty-Eight Insulations* [(6th Cir. 1980)] 633 F.2d [1212,] 1224–1225 [applying Illinois and New Jersey law, but speaking generally].) So it has been held: 'California law clearly allows insurers to be reimbursed for attorney's fees' and other expenses 'paid in defending insureds against claims for which there was no

obligation to defend.' (*Omaha Indem. Ins. Co. v. Cardon Oil Co., supra,* 687 F.Supp. at p. 504.)" (*Buss, supra,* 16 Cal.4th 35, 50–51, italics added; accord, *Truck Ins. Exchange v. Superior Court* (1996) 51 Cal.App.4th 985, 994 [59 Cal.Rptr.2d 529] [if insurer defends under reservation of right to seek reimbursement of defense and indemnity costs, it may "seek reimbursement for payments expended if noncoverage is ultimately proven"]; *Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474 [52 Cal.Rptr.2d 678] [law permits insurer to condition acceptance of defense on *later* right to contest coverage or seek reimbursement of defense costs].)

As *Buss* further noted, "[n]ot only is it good law that the insurer may seek reimbursement for defense costs as to the claims that are not even potentially covered, but it also makes good sense. Without a right of reimbursement, an insurer might be tempted to refuse to defend an action in any part—especially an action with many claims that are not even potentially covered and only a few that are—lest the insurer give, and the insured get, more than they agreed. With such a right, the insurer would not be so tempted, knowing that, if defense of the claims that are not even potentially covered should necessitate any additional costs, it would be able to seek reimbursement." (*Buss, supra,* 16 Cal.4th 35, 52–53.)

Though these comments were made in the context of "mixed" actions, they apply equally here. An insurer facing unsettled law concerning its policies' potential coverage of the third party's claims should not be forced either to deny a defense outright, and risk a bad faith suit by the insured, or to provide a defense where it owes none without any recourse against the insured for costs thus expended. The insurer should be free, in an abundance of caution, to afford the insured a defense under a reservation of rights, with the understanding that reimbursement is available if it is later established, as a matter of law, that no duty to defend ever arose.[5]

---

[5] MV urges that, like *Buss, supra,* 16 Cal.4th 35, our recent decision in *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489 [106 Cal.Rptr.2d 535, 22 P.3d 313] involved an element of "compulsion" not present here. But MV's attempt to distinguish *Blue Ridge* is unavailing. There we held that, having reserved its right to dispute coverage, an insurer may settle a third party action within policy limits, even over the insured's objection, then obtain reimbursement of its settlement payments from the insured upon a later determination that the underlying claims were not covered. We explained that because an insurer risks unlimited exposure to bad faith liability if it declines a reasonable offer within policy limits on grounds that there is no coverage (see *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744]), an insured's refusal to authorize the settlement unless the insurer agreed to forgo reimbursement would place the insurer in a Catch-22 and force it to indemnify uncovered claims, contrary to its contractual obligations. (*Blue Ridge, supra,* at pp. 502–503.) Similarly, by requiring an insurer to risk bad faith liability if it declines a defense because of its belief that the third party claims are not potentially covered, or to forgo reimbursement if it elects to provide one, we would place the insurer in a Catch-22 and force it to furnish a defense, at its own expense, where none was ever owed under the policy.

In *Tamrac, Inc. v. California Ins. Guarantee Assn.* (1998) 63 Cal.App.4th 751 [74 Cal.Rptr.2d 338] (*Tamrac*), a post-*Buss* decision, the Court of Appeal confirmed that if the insurer is legally uncertain whether any claims in the third party complaint are potentially covered, it may defend the third party action to conclusion under a reservation of its right to reimbursement, and may then recoup all its defense costs if an intervening decision has established, as a matter of law, that the potential for coverage, and thus the duty to defend, never arose. (*Id.*, at pp. 757–758.)

*Tamrac* expressly rejected the insured's argument, similar to that made by MV here, that a determination of noncoverage operates prospectively only. The insured, said *Tamrac*, "misplaces reliance on cases where there was *factually* a potential for coverage which imposed the duty to defend, and the insurer subsequently developed *facts* showing there was no duty in the particular circumstances. In those situations the insurer's duty to defend ceases prospectively from the subsequent determination but not retroactively to the beginning. [Citations.] Here, . . . as a matter of law there was *never* a potential for coverage." (*Tamrac, supra,* 63 Cal.App.4th 751, 758.) We find this analysis persuasive.[6]

The instant Court of Appeal suggested that an insurer uncertain of its defense obligations might initially assume the defense, then seek to "stop the bleeding" by obtaining a prompt, though prospective, "extinguishment" of its duty to defend. But where, as here, there was never a duty to defend, this limited remedy provides the insured more, and the insurer less, than the parties' bargain contemplated. Moreover, as Scottsdale and its amici curiae point out, it also forces the insurer to commence litigation of defense and coverage issues, and to press for early resolution of those issues, while the third party litigation is still pending. However, this is a tactic which, in many cases, the insurer is not allowed to pursue, and in general should be discouraged for policy reasons.

"When an insured calls upon a liability insurer to defend a third party action, the insurer as a general rule may not escape the burden of defense by obtaining a declaratory judgment that it has no duty to defend. Were the rule otherwise, the insured would be forced to defend simultaneously against both the insurer's declaratory relief action and the third party's liability action.

---

[6] MV points out that in *Tamrac, supra,* 63 Cal.App.4th 751, the California Insurance Guarantee Association (CIGA), acting in place of the subject policy's insolvent issuer, did not actually advance costs, then seek reimbursement; instead, after initially agreeing to fund a defense, CIGA failed to pay when billed by the insured, thus prompting the insured to sue for the unpaid amounts. However, the Court of Appeal concluded that "this case should be analyzed under CIGA's reservation of a right to seek reimbursement, because it would be idle to require CIGA to pay Tamrac if CIGA has a right to reimbursement from Tamrac. [Citation.]" (*Id.,* at p. 759.)

Because the duty to defend turns on the potential for coverage, and because coverage frequently turns on factual issues to be litigated in the third party liability action, litigating the duty to defend in the declaratory relief action may prejudice the insured in the liability action. To prevent this form of prejudice, the insurer's action for declaratory relief may be either stayed [citation] or dismissed [citation]." (*Montrose, supra,* 6 Cal.4th 287, 305 (conc. opn. of Kennard, J.); see also, e.g., *David Kleis, Inc. v. Superior Court* (1995) 37 Cal.App.4th 1035, 1044–1045 [44 Cal.Rptr.2d 181]; *Haskel, supra,* 33 Cal.App.4th 963, 979 & fn. 15.)

Indeed, "[i]t is *only* where there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist. [Citation.]" (*Haskel, supra,* 33 Cal.App.4th 963, 979; see *Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co.)* (1994) 25 Cal.App.4th 902, 910 [31 Cal.Rptr.2d 38].)

The Court of Appeal's analysis contravenes these sound rules and policies. Unlike the Court of Appeal, we decline to require an insurer uncertain about the law relevant to its coverage and defense obligations to engage its insured in a futile "two-front war." (*Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co.), supra,* 25 Cal.App.4th 902, 910.)

MV urges that, by limiting its reservation of reimbursement rights to those "authorized . . . in *Buss*," *supra*, 16 Cal.4th 35, Scottsdale did not clearly signal its intent to seek reimbursement outside the context of a "mixed" action. We disagree. As we have seen, *Buss* simply applied to "mixed" actions the general premise that an insurer may obtain reimbursement for defending claims or suits as to which it never owed a duty of defense. The language of Scottsdale's reservation of rights was amply sufficient to preserve its reimbursement rights here.

Accordingly, we conclude that an insurer under a standard CGL policy, having properly reserved its rights, may advance sums to defend its insured against a third party lawsuit, and may thereafter recoup such costs from the insured if it is determined, as a matter of law, that no duty to defend ever arose because the third party suit never suggested the possibility of a covered claim. Such is the case here. It follows that, insofar as the Court of Appeal denied Scottsdale's right to reimbursement, its judgment should be reversed.

## CONCLUSION

Insofar as the Court of Appeal concluded that Scottsdale may not pursue an action for reimbursement of defense costs advanced under a reservation of rights, its judgment is reversed. The judgment of the Court of Appeal is otherwise affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Moreno, J., concurred.