Filed 8/23/17

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| RIDDELL, INC. et al., | B275482 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC482698) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| ACE AMERICAN INSURANCE COMPANY et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  John Shepard Wiley Jr., Judge.  Petition granted.

Covington & Burling, David B. Goodwin, Gretchen A. Hoff Varner, Reynold L. Siemens and Jeffrey A. Kiburtz for Petitioners.

No appearance for Respondent.

Duane Morris, Ray L. Wong, Amanda Graham; Nicolaides Fink Thorpe Michaelides Sullivan, Sara M. Thorpe, Jeffrey N. Labovitch; Duplicki Keller, George J. Keller and Jeffrey E. Duplicki for Real Parties in Interest.

---

Riddell, Inc. and other football helmet manufacturers and affiliates (collectively Riddell) are defendants in lawsuits filed by numerous former professional football players alleging personal injuries resulting from their use of Riddell football helmets (the third party actions). Riddell filed suit against numerous insurers (collectively the Insurers) alleging that they owe Riddell a defense and indemnity in the third party actions.[1]

---

[1] The plaintiffs in the superior court and petitioners in this writ proceeding are Riddell, Inc.; All American Sports Corporation; Riddell Sports Group, Inc.; Easton-Bell Sports, Inc.; Easton-Bell Sports, LLC; EB Sports Corp.; and RBG Holdings Corp.

The Insurers are Ace American Insurance Company, Allianz Underwriters Insurance Co., American Home Assurance Co., Arrowood Indemnity Company, Aspen Specialty Insurance Co., Associated International Insurance Co., Century Indemnity Company, Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies, Chartis Specialty Insurance Co., Columbia Casualty Company, Continental Insurance Co., Employers' Fire Insurance Company, First Specialty Insurance Corporation, First State Insurance Company, Illinois National Insurance Co., Insurance Company of North America, Mt. McKinley Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa., New England Reinsurance Co., OneBeacon Insurance Co., Pacific Employers

2

In Riddell's action against the Insurers (the coverage action), the Insurers propounded discovery seeking information relating to prior claims against Riddell, which model of Riddell helmet each of the plaintiffs in the third party actions wore, and the dates of use. Unsatisfied with Riddell's responses to some of the discovery requests, the Insurers moved to compel further responses, including privilege logs of documents Riddell had withheld in discovery responses that had already been provided. Riddell moved for a protective order staying the discovery at issue. The trial court granted the motions to compel and denied the motion for a protective order. Riddell filed the instant petition for a writ of mandate challenging those rulings with respect to some of the discovery requests.

We agree with Riddell that the discovery at issue is logically related to factual issues in the third party actions and that a stay of that discovery is therefore appropriate. We agree with the Insurers, however, that Riddell must provide privilege logs of documents withheld in document productions that have already occurred. We accordingly grant the petition and direct the trial court to vacate its order on the Insurers' motions to compel and enter a new order granting the motions as to the privilege logs only. We also direct the trial court to grant Riddell's request for a stay of the discovery at issue.

---

Insurance Co., Transcontinental Insurance Co., Transport Indemnity Company, Twin City Fire Insurance Co., Westchester Fire Insurance Co., and Westport Insurance Corp.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Third Party Actions*

Former professional football players and their representatives and spouses filed numerous lawsuits against Riddell alleging that the former players suffered long-term neurological damage from repeated head injuries as a result of wearing Riddell helmets while playing football.  The plaintiffs allege causes of action for negligence and strict products liability based on defective design and failure to warn.

Most of the lawsuits have been consolidated in a federal multidistrict proceeding entitled *NFL Players' Concussion Injury Litigation*, MDL No. 2323 (the MDL), which is pending in the United States District Court for the Eastern District of Pennsylvania.  The federal district court in the MDL has stayed all discovery pending the resolution of certain issues, so no discovery on the merits has taken place in the MDL.

B.  *Riddell's Complaint and the Insurers' Responses*

On April 12, 2012, Riddell filed the coverage action against the Insurers.  The operative first amended complaint alleges claims for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing.  Riddell alleges that the Insurers issued primary and excess liability insurance policies to Riddell, including coverage for commercial general liability and products liability.  Riddell further alleges that the Insurers have a duty to defend the third party actions and indemnify Riddell for any losses suffered.  According to Riddell, some of the Insurers have agreed to provide a defense but others

have not, and none of the Insurers has agreed to indemnify Riddell.

The Insurers filed answers alleging numerous affirmative defenses, including that Riddell expected or intended the injuries alleged in the third party actions, that Riddell had prior knowledge of the alleged injuries but failed to disclose that knowledge when purchasing liability insurance, and that the injuries did not occur during the policy periods. Some Insurers also cross-complained for declaratory relief concerning the duties to defend and indemnify and for reimbursement of defense costs.

C.      *The Discovery Stay, Protective Order, and Lifting of the Stay*

The trial court initially stayed all discovery in the coverage action. On August 10, 2012, the court partially lifted the stay, allowing discovery to proceed only on the existence and terms of insurance, self-insurance, captive insurance, exhaustion of insurance policy limits and self-insured retentions, formation and dissolution of insured entities, and foundational matters pertaining to the duty to defend.

On December 13, 2012, the trial court entered a stipulated protective order providing that the parties may designate documents, information, or other material as "Protected Material" and must maintain the confidentiality of such material. The stipulated protective order defined the term "Protected Material" as "[i]nformation or materials that constitute or contain trade secret or other personal or confidential commercial information" or "'protected health information'" as defined by federal regulations for purposes of the Health Insurance Portability and Accountability Act of 1996.

On June 19, 2015, the trial court lifted the discovery stay in its entirety but cautioned counsel for the Insurers to avoid any discovery that would prejudice Riddell in the third party actions.

D.    *Discovery, Motions to Compel, and Motion for Protective Order*

On September 11, 2015, Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (collectively LMI) propounded a set of four document requests on Riddell.  Request number 1 sought "all documents relating to the defense of prior bodily injury claims, including but not limited to, correspondence with or from insurers, defense counsel and counsel for the claimant(s)."  (Block capitals omitted.)  Request number 2 sought "all documents relating to the settlement or resolution of prior bodily injury claims, including but not limited to, correspondence with or from insurers, defense counsel and counsel for the claimant(s)."  (Block capitals omitted.)  Request number 3 sought all documents relating to the defense of 15 claims identified in a spreadsheet previously produced by Riddell in the coverage action.  And request number 4 sought all documents relating to the settlement of the same 15 claims.  All four requests are at issue in this writ proceeding.

Riddell responded to LMI's requests by asserting various objections and also identifying 450 responsive documents that had been produced in response to previous requests.  Riddell also conducted an additional review, produced some previously withheld documents, and produced again but in less-redacted form some documents that had previously been produced.  On April 14, 2016, LMI moved to compel further responses to its document requests.  LMI contended that Riddell's responses were

6

untimely and that Riddell had consequently waived all objections and should be compelled to produce all responsive documents "regardless of Riddell's objections." In the alternative, LMI sought an order compelling Riddell to provide a privilege log.

On November 13, 2015, the Insurers propounded a second set of document requests and a second set of special interrogatories on Riddell. Of the document requests, only numbers 73, 74, and 79 to 86 are at issue in this proceeding.[2] Those requests sought all documents relating to: the dates when each plaintiff in the MDL played football in the National Football League (NFL) or certain other professional football leagues (number 73); the dates when each of those plaintiffs wore a Riddell helmet and the model worn (number 74); and every claim against Riddell in which Santana Insurance Company (Santana) or certain other insurers provided a defense (numbers 79 and 86), the insurance provided by Santana or certain other insurers was impaired or exhausted (numbers 80 and 84), Riddell funded its own defense (number 81), or Santana or Riddell or certain other insurers paid part of the settlement or judgment (numbers 82, 83, and 85).

Of the interrogatories, only numbers 86 and 87 are at issue in this proceeding. They ask Riddell to state all facts relating to: the dates when each plaintiff in the MDL played football in the NFL or certain other professional football leagues (number 86) and the dates when each of those plaintiffs wore a Riddell helmet and the model worn (number 87).

_____

[2] Riddell's writ petition also identifies document request numbers 75 to 78 as being at issue, but Riddell clarifies in its reply that it is not challenging the trial court's order with respect to those requests.

7

Riddell responded to those document requests and interrogatories by asserting various objections and contending that insofar as the document requests sought documents relevant to the existence and terms of insurance, self-insurance, captive insurance, exhaustion of insurance policy limits and self-insured retentions, formation and dissolution of insured entities, and foundational matters pertaining to the duty to defend, such documents had previously been produced. On April 14, 2016, the Insurers moved to compel further responses, including production of a privilege log.

Also on April 14, 2016, Riddell moved for a protective order. Riddell argued that the discovery requests described above[3] sought information that was logically related to factual issues affecting Riddell's liability in the third party actions, as well as information protected by the attorney-client privilege and work product doctrine. Riddell sought "an order relieving [Riddell] from responding to" the discovery at issue, and Riddell requested an award of sanctions against the Insurers for discovery abuse.

E.    *The Trial Court's Ruling*

On May 20, 2016, the trial court rejected LMI's argument that Riddell had waived its objections to LMI's document requests, but the court otherwise granted the motions to compel and denied Riddell's motion for a protective order and sanctions. The court reasoned that the Insurers "contend that they are only obligated to defend and indemnify Riddell for the actions within

---

[3]    Namely, LMI's first set of document requests, numbers 1 to 4; the Insurers' second set of document requests, numbers 73, 74, and 79 to 86; and the Insurers' second set of special interrogatories, numbers 86 and 87.

the multidistrict litigation in which the former football players contend their injuries stem from a period for which the insurers issued policies.  The coverage issue in this case thus depends primarily on when the underlying claims arose.  The question of when the underlying claims arose 'is logically unrelated to the issues of consequence in the underlying case.'"  (Quoting *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 302 (*Montrose I*).)

The trial court acknowledged that the Insurers' discovery sought evidence concerning whether and when the former players wore Riddell helmets and the model worn when the players were injured, and the MDL plaintiffs bear the burden of proof on all of those facts.  But the court accepted the Insurers' arguments that (1) Riddell can respond to the discovery without confirming or admitting the truth of any allegations or information provided, and (2) the existing protective order "is sufficient to prevent prejudice to Riddell in its defense of the underlying action."

The court also ordered Riddell to produce privilege logs, excluding only "communications with its counsel in this action after the date it filed this action, or any work product its counsel created in anticipation of this action or in the course of this action.  Riddell must list all other documents it withholds."

F.    *Riddell's Ex Parte Application and Writ Petition*
On June 1, 2016, Riddell filed an ex parte application seeking a stay of the order granting the motions to compel further responses to the discovery at issue in Riddell's motion for a protective order, so that Riddell could file a writ petition in this court.  Riddell also asked the trial court to certify the issues for

9

appellate resolution under section 166.1 of the Code of Civil Procedure.

On June 2, 2016, the trial court granted Riddell's request for a stay through June 13. The court declined to certify any issues for appellate review under Code of Civil Procedure section 166.1.

Riddell filed the instant petition for writ of mandate, asking that we direct the trial court to vacate its order of May 20, 2016. We issued a stay of that order and requested opposition to the petition. We subsequently issued an alternative writ, directing the trial court to vacate its order or show cause why the petition should not be granted. The trial court did not vacate its order.

## DISCUSSION

Riddell argues that the trial court erred by denying Riddell's request to be relieved from responding to the disputed discovery, because the discovery is logically related to unresolved factual issues affecting liability in the third party actions and a confidentiality order would not realistically protect Riddell from potential prejudice. We agree. We also agree with LMI, however, that Riddell must produce privilege logs for document productions that have already occurred.

A.    *Governing Legal Principles*

"It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. [Citation.] . . . '[T]he carrier must defend a suit which *potentially* seeks damages within the

10

coverage of the policy.' [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]" (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081.)

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Horace Mann Ins. v. Barbara B.*, *supra*, 4 Cal.4th at p. 1081.) In addition, "facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." (*Montrose I*, *supra*, 6 Cal.4th at p. 296.) Extrinsic facts can also negate the duty to defend, but only if the facts are undisputed and conclusively eliminate the potential for coverage. (*Id.* at pp. 298-299.)

"Normally, the insurer must defend until the underlying action is resolved by settlement or judgment. However, circumstances may change such that there is no longer a potential for coverage by, for example, (1) the discovery of new or additional evidence, (2) a narrowing or partial resolution of claims in the underlying action, or (3) the exhaustion of the policy. [Citations.] When any such circumstances exist, an insurer may bring a declaratory relief action, in order to conclusively establish that there is no longer a duty to defend. [Citation.]" (*Great American Ins. Co. v. Superior Court* (2009) 178 Cal.App.4th 221, 234-235 (*Great American*).) Alternatively, if the insurer has refused to defend, then the insured may bring a declaratory relief action in order to resolve the issue and secure a

11

defense.  (See, e.g., *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 971 (*Haskel*).)

Litigation of the declaratory relief action when the underlying action is pending may, however, create a risk of prejudice to the insured.  For example, "[i]f the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage."  (*Montrose Chemical Corp. v. Superior Court* (*Canadian Universal Ins. Co.*) (1994) 25 Cal.App.4th 902, 910 (*Montrose II*).)

Consequently, "[i]f the factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation, the trial court *must* stay the declaratory relief action."  (*Great American*, *supra*, 178 Cal.App.4th at p. 235; see *Montrose I*, *supra*, 6 Cal.4th at p. 301; *United Enterprises, Inc. v. Superior Court* (2010) 183 Cal.App.4th 1004, 1012.)  "If there is no such factual overlap and the declaratory relief action can be resolved on legal issues or factual issues unrelated to the issues in the underlying action, the question as to whether to stay the declaratory relief action is a matter entrusted to the trial court's discretion."  (*Great American*, *supra*, 178 Cal.App.4th at pp. 235-236; see *Montrose I*, 6 Cal.4th at p. 302; *United Enterprises*, at p. 1012.)

In *Haskel*, the Court of Appeal held that the foregoing principles apply not only to a request for a stay of the declaratory relief action but also to a request for "a stay of all discovery in the declaratory relief action which is *logically related* to issues affecting [the insured's] liability in the underlying action."

(*Haskel*, *supra*, 33 Cal.App.4th at p. 980.)  Justice Croskey explained that although narrower than a request for a stay of the declaratory relief action itself, the request for a discovery stay in that action presents "essentially . . . the same basic question." (*Ibid.*)  Accordingly, discovery in the declaratory relief action that is logically related to issues affecting the insured's liability in the underlying action "should be stayed pending resolution of the . . . underlying action unless . . . a confidentiality order will be sufficient to protect [the insured's] interests."  (*Ibid.*)

The same year that *Haskel* was decided, a plurality of the Supreme Court, in discussing a related issue, cited with apparent approval *Haskel*'s holding that discovery that is logically related to liability in the underlying action should be stayed.  (See *Adams v. Paul* (1995) 11 Cal.4th 583, 593 (plur. opn. of Arabian, J.).)  The following year, *Republic Indemnity Co. v. Schofield* (1996) 47 Cal.App.4th 220 likewise agreed with *Haskel* on that point.  (*Republic Indemnity Co.*, at p. 228.)  But in the ensuing 21 years, no published California case has addressed the issue.

We agree with Justice Croskey's reasoning in *Haskel* that a request for a stay of discovery in the declaratory relief action presents "essentially . . . the same basic question" as a request for a stay of the action itself.  (*Haskel*, *supra*, 33 Cal.App.4th at p. 980.)  Under the *Montrose I* line of cases, if the factual issues to be resolved in the declaratory relief action overlap with unresolved issues in the underlying action, then the declaratory relief action must be stayed because of the risk of prejudice to the insured, including the risk of collateral estoppel.  Discovery in the declaratory relief action that is logically related to issues affecting liability in the underlying action poses a similar risk of prejudice.  Moreover, the insured will inevitably be prejudiced by

13

having to pay the costs of discovery in the declaratory relief action that would, if it had taken place in the underlying action, have been paid for by any insurers with a duty to defend.

The upshot of these legal principles is that an insurer cannot, over the insured's objection, use a declaratory relief action as a forum to litigate factual issues affecting the insured's liability in the underlying action. Rather, such issues must be litigated in the underlying action. If the allegations in that action, together with the facts known to the insurer, show a potential for coverage, then the insurer must provide a defense in that action. If, in the course of defending that action, the insurer learns of additional, undisputed facts that conclusively eliminate the potential for coverage and thus negate the duty to defend, then the insurer may seek declaratory relief on that basis. But the insurer cannot use the discovery process in the declaratory relief action to investigate or develop those facts if they are logically related to issues affecting the insured's liability. Rather, that factual investigation and development must take place in the underlying litigation, where any insurer with a duty to defend should be paying for the insured's defense, including discovery costs. (See generally *Haskel, supra*, 33 Cal.App.4th at pp. 975-980.)

B. *Riddell's Request for a Partial Stay of Discovery*

Riddell argues that the discovery at issue in the coverage action is logically related to issues affecting Riddell's liability in the third party actions. We agree.

The document requests seek all documents relating to various prior claims against Riddell, the defense or settlement of certain claims, or the dates when the MDL plaintiffs played

14

professional football and wore Riddell helmets, and the models worn. The interrogatories similarly concern the dates when the MDL plaintiffs played professional football and wore Riddell helmets, and the models worn. All of that discovery is straightforwardly related to issues affecting Riddell's liability in the third party actions. As the trial court acknowledged, the MDL plaintiffs bear the burden of proving that they played, when they played, that they wore Riddell helmets, and which models they wore. In addition, the discovery concerning prior claims against Riddell will yield evidence of what Riddell knew about the risks of playing football wearing Riddell helmets, and when Riddell knew it. The extent and timing of Riddell's knowledge of those risks are, of course, facts at issue in the third party actions—the MDL plaintiffs allege that Riddell "'knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the helmets.'" Consequently, all of the discovery at issue is logically related to issues affecting Riddell's liability in the third party actions.

Riddell's request for a stay of that discovery should therefore have been granted unless a confidentiality order would have been sufficient to protect Riddell's interests. Riddell argues that the existing confidentiality order does not provide adequate protection and no revision of the order would remedy that defect.[4] Again, we agree.

---

[4] We grant the Insurers' motion to take additional evidence, namely, the exhibits to the declaration of attorney George J. Keller. According to the declaration, the exhibits are alternative versions of the confidentiality order that were proposed in negotiations between the parties.

15

For the reasons already explained, all of the discovery at issue is intimately related to factual issues affecting Riddell's liability in the third party actions. If the Insurers use evidence obtained through this discovery to litigate those factual issues in the coverage action, then Riddell will suffer prejudice by being collaterally estopped from relitigating any adverse findings in the third party actions while being unable to use any favorable findings to its advantage. (*Montrose II*, *supra*, 25 Cal.App.4th at p. 910.) Moreover, if Riddell is compelled to respond to this discovery in the coverage action rather than in the third party actions, then Riddell rather than any insurers with a duty to defend will be forced to bear the costs of collecting and producing all of this evidence. No confidentiality order can solve either of these problems. Moreover, the federal district court hearing the MDL is not bound by a state court confidentiality order in the coverage action. (See *Baker v. General Motors Corp.* (1998) 522 U.S. 222, 225, 238 [118 S.Ct. 657, 139 L.Ed.2d 580].) It might show deference to such an order, but it might not. Riddell's reply brief summarizes the situation well: "[N]o confidentiality order, no matter how broad, can protect Riddell from the prejudice caused by having to build the underlying plaintiffs' case for them, bear investigation and discovery costs that should be borne by the Insurers . . . , and risk collateral estoppel."

Because the discovery at issue is logically related to issues affecting Riddell's liability in the third party actions and no confidentiality order would adequately protect Riddell's interests, the trial court should have granted Riddell's request for a stay.

The Insurers' arguments for a contrary conclusion lack merit. First, the Insurers assert that the disputed discovery does not "seek any information logically related to" the third party

16

actions, but they present no intelligible argument in support of that claim. In particular, they do not attempt to explain how their requests for *all documents relating to* various categories of prior claims against Riddell, or to the defense or settlement of those claims, or to the dates when the MDL plaintiffs played football using Riddell helmets, could possibly be logically unrelated to issues affecting Riddell's liability in the third party actions.

Both in their briefs and at oral argument, the Insurers contended that, for many of the discovery requests at issue, their intention was merely to obtain information related to erosion or exhaustion of policy limits, self-insurance, captive insurance, and other coverage issues that are unrelated to liability in the third party actions. Some of the discovery requests, for example, concern prior claims in which the insurance provided by Santana (Riddell's captive insurer) was impaired or exhausted, or in which Santana paid all or part of a settlement or judgment. Assuming for the sake of argument that the Insurers' description of their intentions is accurate, the discovery is still logically related to issues affecting liability in the third party actions, because the discovery requests sweep much more broadly than the Insurers purportedly intended. The requests involving Santana, for example, do not merely ask for information or documents concerning erosion or exhaustion of policy limits. Rather, they identify various prior claims in which Santana was involved and request all documents relating to those claims. When questioned on this point at oral argument, counsel for the Insurers failed to present any argument for the conclusion that such broad requests

17

are logically unrelated to issues affecting liability in the third party actions.[5]

Second, the Insurers argue that under *Haskel*, a stay of discovery that is logically related to issues affecting liability in the third party actions is not required unless "the insured will suffer prejudice if forced to respond to that discovery." That is, the Insurers interpret *Haskel* as holding that before granting a request for a discovery stay the court must determine *both* that the discovery is logically related to liability in the underlying litigation *and* that responding to the discovery would be prejudicial. *Haskel* does not so hold. Rather, it holds that if discovery in the declaratory relief action is logically related to

---

[5]     We also note that some of the correspondence from the meet-and-confer process concerning the discovery requests at issue suggests that the Insurers did not intend the discovery to be as narrowly targeted as the Insurers now contend. Correspondence from Riddell's counsel sought to clarify whether the Insurers sought only "payment/impairment/exhaustion information," and counsel expressed Riddell's willingness to comply if that were all the Insurers sought. In response, counsel for LMI asserted "there should not be any dispute that the [c]ourt lifted any limitations on the scope of discovery in June 2015. Therefore, LMI is entitled to seek discovery regarding all potential issues in this matter, including the payment of defense and indemnity of prior claims." Thus, despite Riddell's expressed willingness to comply if the discovery were appropriately confined to coverage issues, and despite the trial court's admonition, upon lifting the discovery stay, that the Insurers should be careful to avoid discovery that could prejudice Riddell in the third party actions, LMI defended its requests on the ground that it could seek discovery on "all potential issues in this matter" because there were no longer "any limitations on the scope of discovery."

18

issues affecting liability in the underlying action, then "such discovery should be stayed pending resolution of the liability claims asserted against [the insured] in the underlying action unless the court finds that a confidentiality order will be sufficient to protect [the insured's] interests." (*Haskel*, *supra*, 33 Cal.App.4th at p. 980.)

Third, the Insurers argue that compelling Riddell to respond to the disputed discovery would not prejudice Riddell. The argument fails both because *Haskel* does not require a separate finding of prejudice and because compelling Riddell to respond to the disputed discovery would severely prejudice Riddell, for the reasons we have already described. The Insurers' arguments concerning prejudice never mention the collateral estoppel problem or the shifting of discovery costs from insurers who have a duty to defend (in the third party actions) to Riddell (in the coverage action).[6]

---

[6] An example illustrates the frivolous nature of the Insurers' arguments concerning prejudice. One of the disputed document requests seeks "[a]ll documents relating to each and every claim against Riddell where Riddell paid any amount to fund a settlement or judgment." (Block capitals omitted.) The Insurers' entire argument concerning the potential prejudice from that request consists of the following two sentences: "The underlying actions have nothing to do with whether [Riddell] has paid any prior claim. Thus, the disclosure of such information would not prejudice [Riddell's] defenses in the underlying actions." The request is not, however, limited to "information" concerning whether Riddell paid a prior claim. Rather, the request identifies a particular category of claims against Riddell (i.e., those for which Riddell paid part of a settlement or judgment) and asks for *all documents relating to those claims*. Those documents are likely to include evidence showing what Riddell knew about the

19

Fourth, the Insurers argue that the disputed discovery requests are unproblematic because they "call for objective facts (which do not depend on conflicting legal theories), or, at a minimum, alleged facts, that any insurer would need when considering a claim for coverage (similar to seeking the date of the accident or the model of the car in an automobile liability claim)." The argument lacks merit. The rule requiring a stay of discovery that is logically related to liability in the underlying action (unless a confidentiality order would provide adequate protection) does not contain an exception for "objective or alleged facts that any insurer would need when considering a claim for coverage." Such an exception would swallow the rule, because discovery that is logically related to liability in the underlying action will usually be related to objective or alleged facts that an insurer would need when evaluating coverage. Moreover, the Insurers' argument reflects a misunderstanding of the general legal principles reviewed *ante*. Either the allegations in the third party actions, together with extrinsic facts presently known to the Insurers, show a potential for coverage and thereby trigger a duty to defend, or they do not. If they do, then the Insurers cannot use discovery in the coverage action to investigate and develop additional facts to defeat that duty if those facts are logically related to liability in the third party actions.

---

risks of playing football wearing Riddell helmets, and when Riddell knew it. If the Insurers use that evidence in support of their affirmative defense that Riddell "expected or intended" the injuries suffered by the MDL plaintiffs, then Riddell will suffer prejudice by being collaterally estopped from relitigating any adverse findings in the third party actions.

20

Fifth and finally, the Insurers argue that before imposing a stay, the court must consider not only the potential prejudice to the insured if the stay is denied but also the potential prejudice to the insurer if the stay is granted, and the Insurers argue that the trial court did not abuse its discretion in conducting this "balancing of interests." The argument fails because the case law does not call for any such balancing under the circumstances of this case. If the factual issues to be resolved in the declaratory relief action and in the underlying liability action do not overlap, then a stay is discretionary and "the trial court should consider the possibility of prejudice to *both* parties." (*Great American*, *supra*, 178 Cal.App.4th at p. 236.) But if there are overlapping factual disputes, then a stay is mandatory. (*Id.* at p. 235.) Similarly, if discovery in the declaratory relief action is logically related to issues affecting liability in the underlying action, then the discovery must be stayed unless a confidentiality order would adequately protect the insured's interests. (*Haskel*, *supra*, 33 Cal.App.4th at p. 980.) The stay in the instant case is mandatory, not discretionary, so no balancing is necessary or appropriate.

For all of the foregoing reasons, we conclude that the trial court erred by granting the motions to compel further responses to the discovery at issue and denying Riddell's request for a stay of that discovery.

C.    *The Insurers' Requests for Privilege Logs*

In their motions to compel, the Insurers sought an order requiring Riddell to provide privilege logs identifying documents withheld from previous productions as well as documents withheld from the future productions that the Insurers sought to

compel.  The trial court granted the request.  Because we conclude that, putting aside the issue of privilege logs, the motions to compel should have been denied, the request for privilege logs with respect to future productions is moot.  The only remaining issue is the request for privilege logs identifying documents withheld from previous productions.

In its petition, Riddell raises only two arguments concerning privilege logs:  (1) Riddell should not be required to log privileged documents generated in connection with the third party actions that post-date the filing of those actions, because a privilege log of such documents cannot be required in the MDL; and (2) production of privilege logs would be unduly burdensome.

The Insurers present no arguments on the first point, and we agree with Riddell.  The federal district court in the MDL is prohibited from requiring Riddell to log its post-filing communications with its attorneys.  (See *Grider v. Keystone Health Plan Central, Inc.* (3d Cir. 2009) 580 F.3d 119, 139, fn. 22.)  The case management order in the coverage action likewise provides that "[n]o party is required to identify on its respective privilege log any privileged correspondence between it and its coverage counsel regarding this coverage action if such correspondence took place after the filing date of this coverage action."  We see no reason why Riddell should be required in the coverage action to log attorney-client communications from the pending third party actions that it cannot be required to log in those actions.  The Insurers have articulated none.

On the second point, however, we agree with the Insurers.  They correctly point out that under Code of Civil Procedure section 2031.240, subdivision (c)(1), if an objection to a document request is based on a claim of privilege or work product, then the

22

response to the request "shall provide sufficient factual information for other parties to evaluate the merits of that claim, including, if necessary, a privilege log."  Again, the only argument in Riddell's petition against providing a privilege log of documents Riddell has withheld from document productions Riddell has already undertaken is that it would be burdensome.  Riddell cites no authority for such an exception to the statutory requirement of producing a privilege log, and we are aware of none.  Moreover, given that Riddell has already performed the document review necessary to produce the documents it has produced and withhold the documents it has withheld, the additional burden of producing a log of the withheld documents should be relatively light.

For all of these reasons, we conclude that the trial court correctly granted the Insurers' request to compel Riddell to produce privilege logs of documents withheld from previous productions, but the court should have excluded privileged documents generated in connection with the third party actions that post-date the filing of those actions.

## DISPOSITION

The petition is granted.  Let a peremptory writ of mandate issue directing respondent to (1) vacate its order of May 20, 2016, with respect to LMI's first set of document requests, numbers 1 to 4; the Insurers' second set of document requests, numbers 73, 74, and 79 to 86; and the Insurers' second set of special interrogatories, numbers 86 and 87; and (2) enter a new order (a) granting the Insurers' motions to compel Riddell to produce privilege logs of documents withheld in previous productions, excluding documents generated in connection with the third party actions that post-date the filing of those actions, (b) otherwise denying the Insurers' motions to compel, and (c) staying the discovery at issue.  Riddell is entitled to recover its costs incurred in this writ proceeding.

MENETREZ, J.[*]

We concur:

PERLUSS, P. J.

SEGAL, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.